O

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### LAREDO DIVISION

| | | |
|---|---|---|
| **SALINA FLORES, Individually and as** | § | |
| **the representative of the Estate of Maria** | § | |
| **Valenzuela Holstine, Deceased, JOSE A.** | § | |
| **FLORES, and GERALDINE CHANCE** | § | |
| **Plaintiffs,** | § | |
| **v.** | § | **Civil Action No. L–06–cv–53** |
| | § | |
| | § | |
| **DAIMLERCHRYSLER** | § | |
| **CORPORATION** | | |
| **Defendant.** | | |

## MEMORANDUM AND ORDER

The allegations in this case are that, on October 8, 2004, Maria Valenzuela Holstine was loading sewing machines into her 2001 Dodge Caravan Minivan. While she was doing this, she placed the minivan in the "park" position,  with the engine running The vehicle began moving and struck  Holstine. As a result of the accident, Holstine suffered serious injuries and was hospitalized for almost six weeks. During this time, she underwent a number of procedures and surgeries. Upon her release from the hospital, she continued to suffer from pain in her back and neck. This pain required ongoing medical intervention. On September 12, 2006, Holstine underwent a cervical epidural steroid injection (CESI)  to alleviate some of her neck pain. Shortly after the procedure, Holstine stopped breathing and suffered anoxic brain injury. She died October 5, 2006.

Mrs. Holstine's three surviving children sue as survivors of her personal injury claims and also for her wrongful death. They sue the manufacturer of the minivan, DaimlerChrysler, because the transmission of the vehicle was defective in being susceptible to a "false park"

1

condition and thus unreasonably dangerous. Defendant files for summary judgment on the death

claim, alleging that the causation testimony of Dr. Derek Jones should be stricken as unreliable.

They also seek summary judgment on the defect issue, again challenging the expert witness, Neil

Mizen. Finally, they seek summary judgment on Plaintiffs' claim for exemplary damages.


**<u>The Testimony of Dr. Derek Jones</u>**

Dr. Derek Jones has expressed  the opinion that Holstine's neck pain treated in 2006 was

the result of the 2004 accident with the minivan. He admittedly did not review  Holstine's pre-

injury medical records and based his opinion on one terse mention of neck pain found in the

post-accident hospital records.  Dr. Jones found that reference significant given the amount of

pain  Holstine was experiencing  at the time. Dr. Jones never met or treated Holstine. He did not

meet with anyone who might provide information on her medical history. He never reviewed any

of her diagnostic films.   Specifically he  did not review the medical records of Dr. Jaime Sued.

These records would have shown, among other things, that before the incident in question,

Holstine was diagnosed with severe, intractable cervical degenerative disk disease, cervical

spondylosis, and severe intractable cervicalgia. She had been previously treated with several

cervical spine injections.

When testifying as to medical causation, an expert must consider and exclude other

possible causes of the injury. <u>Viterbo v. Dow Chemical Co.</u>, 826 F.2d 420, 424 (5th Cir. 1987).

While the expert is not required to discount every possible cause of the injury, an expert should

be aware of the pertinent medical history. <u>Id.</u> Here, in forming his initial opinion, Dr. Jones  was

necessarily unable to exclude Holstine's pre-existing problems as a possible cause of her neck pain.

Plaintiffs attempt to rectify the situation with an affidavit by Dr. Jones made subsequent to his deposition, after he had examined all of the relevant medical history. In his affidavit, Dr. Jones states that having reviewed all of medical history, including the records of Dr. Jaime Sued regarding the neck pain suffered by Holstine prior to the accident in question, he is still of the opinion that the 2004 accident caused the neck pain for which Holstine sought the CESI injections. [Dkt. No. 49, Ex. 1] However, this does not cure the defect in his opinion. The Fifth Circuit has noted that "an expert who forms an opinion before he begins his research is biased and lacking in objectivity," and that this is an indicator that the testimony is not credible. Viterbo at 423; see also Munoz v. Orr, 200 F.3d 291, 301 (5th Cir. 2000). Since Dr. Jones formed his opinion prior to reading all of the medical history, he was lacking objectivity when evaluating the new information.

The only mention of Dr. Sued's records in Dr. Jones's affidavit is that he reviewed Dr. Sued's records. [Dkt. No. 29, Ex. 1 ¶8]. He fails to address why the serious, persistent neck pain complained of by Holstine prior to the accident cannot be the cause of her pain after the accident. It is also instructive that, in a sworn response to Defendant's interrogatories, Holstine described her injuries without any mention of neck pain. Each of these facts weighs against the reliability of the methodology employed by Dr. Jones and the reliability of his opinion.

**Defendant's Motion for Summary Judgment on Death Claim**

3

Defendant moves for summary judgment on plaintiffs' wrongful death and survival causes of action, contending that without the testimony of Dr. Jones, plaintiffs have failed to show that the 2004 accident caused Holstine's death. Without the testimony of Dr. Jones, there is no evidence indicating that the pain for which Holstine sought the injections that killed her was related to the 2004 accident. Plaintiffs, in their response to this Motion for Summary Judgment, make no argument  that summary judgment should not be granted if the testimony of Dr. Jones is stricken.  Therefore, summary judgment on the wrongful death claim should be granted. Defendant's motion also purports to attack the survival claim, but that claim would apply to the pain and suffering experienced by Holstine from injuries undeniably caused by the accident. Because the record is not developed on this matter, summary judgment is not appropriate on the survival claim.

## Motion to Exclude the Testimony of Neil Mizen

Defendant moves to exclude the testimony of Plaintiffs' expert Neil Mizen. Defendant contends that the techniques employed by Mizen in testing the transmission on the minivan  are not adequately scientific, and that he is not qualified to testify in the area of vehicle transmissions. Defendant also claims that Mizen is not qualified to testify in the areas of warnings and alternative designs.

In his tests, Mizen purposely manipulated the vehicle  to achieve what he  calls "illusory park", where the park pawl is engaged and selector lever is between park and reverse. His opines that Holstine  accidentally placed the vehicle in illusory park, and when she was loading objects into the vehicle, the car shifted into reverse, possibly from  vibration caused by closing the rear door.

4

Defendant attacks  the credibility of Mizen's testimony regarding automobile transmissions, claiming that: 1.) Mizen is unqualified because he does not have sufficient experience in the field of automotive transmissions; 2.)the tests used to achieve illusory park were not based upon scientific methodology; and 3.) Mizen's alternative designs are untested and unproved.

Mizen holds a master's degree in Mechanical Engineering. He has presented papers at Society of Automotive Engineers meetings, and worked as a Research Engineer in the Vehicle Dynamics Department of Cornell Laboratory for five years. He has spent a great deal of time studying the condition of illusory park. While not binding on this Court, a number of courts have found him competent to testify on the condition of illusory park. The Court is satisfied that Mizen can testify about the concept of  illusory park and the mechanics of how it can occur. The problem is that, as the court reads his deposition, Mizen could articulate no defect with the basic design of the transmission on this vehicle. For example, he testified that: the vehicle had a properly functioning brake shift interlock feature; the alignment of the gear indicator was proper; there was nothing unusual about the shift linkage cable; the key interlock function was proper; he had no complaints about the park gear or park pawl design; the inner manual level was proper; and the flexible cable design was a good one. Mizen essentially summarized his view as follows:

> But I have found in my life virtually all vehicles can be positioned in illusory park, and so I'm not going to say that that's the fault. They have to to have a warning system. And I think the warning system is the basic fault.
> Mizen Depo., p.70.

Specifically, Mizen insisted that a written warning in an owners' manual would  basically be worthless and that no less than an audible warning would suffice. Depo, p. 116.

The Court is convinced that Mizen's expertise does not extend to evaluating the economical and technological feasibility of installing such a warning system on this  minivan. Mizen has never worked for an automobile manufacturer. He has never designed a transmission system for production, nor has he consulted on the design of a transmission system.  He considers himself a "warnings expert" because he has written many machine tool warnings. He consulted with the manufacturer of a log-grinding machine to suggest changes in the location of certain platforms where workers stand.  He has also been involved with evaluating construction equipment, conveyors, cranes, and hoists. None of this background relates to the viability of installing  an audio alarm in a vehicle transmission to detect  the unusual cases of illusory park. Proposing an ideal situation to a problem is not a qualification for designing or producing a practical  solution to the problem. Mizen has testified, essentially, that an audio alarm simply involves a "computer change" on the vehicle. He cites the installation of such an alarm on a particular model of Dodge pick-up truck. He also acknowledged that the alarm was not installed on later models, and he was apparently unaware of any other vehicle containing such an alarm. The admissibility of the identified safety recall on the Dodge pick-up trucks can be determined in due course, but merely calling attention to that report does not constitute an expertise on the subject.

**Defendant's Motion for Summary Judgment**

A separate summary judgment motion argues that, if the Mizen testimony is stricken, Plaintiffs cannot prove a defective product with a safer alternative design. The Court will deny that motion for the time being. Plaintiffs may possibly be able to identify a witness with more expertise on the feasibility of installing an audio warning system on this model of minivan. The

Court is willing to allow a reasonable time for doing so. In that regard, however, the Court is concerned as to how the Plaintiffs will ultimately be able to prove liability in this case. If the Court correctly understands this record, no other person was present when the incident in question occurred. No testimony about the event from Mrs. Holstine has been preserved in admissible form. Mizen's testimony is based on suppositions about the location of the minivan and the sequence of events that preceded the striking of the deceased. Those suppositions support his theory that the vehicle could not have been left in reverse gear because, in that event, the vehicle would have moved sooner. Again, however, the question is how those suppositions will be established by admissible evidence.

**<u>Defendant's Motion for Summary Judgment on Exemplary Damages</u>**

Defendant's make three arguments regarding exemplary damages: 1.) Michigan law, which does not permit exemplary damages, should apply; 2.) Even if Texas law is applied, Plaintiffs have not offered sufficient evidence to withstand summary judgment; and 3.) Imposing exemplary damages in this case would render Texas's exemplary damage law unconstitutionally vague.

**A. Choice of Law**

In a case based on diversity jurisdiction, federal courts are to apply the choice-of-laws principles of the state in which they sit. <u>Klaxon v. Stentor Electric Mfg., Inc.</u>, 313 U.S. 487, 496 (1941). Texas uses the "most significant relationship" test of the Restatement (Second) of Conflicts in determining which state's law to apply. <u>Crisman v. Cooper Indus.</u>, 748 S.W. 2d 273, 276 (Tex.App.–Dallas 1988, writ denied). In order to determine which state has the most significant relationship, the Court considers: 1.) the place where the injury occurred; 2.) the place

where the conduct causing the injury occurred; 3.) the domicile, residence, or primary place of business of the parties; and 4.) the place where the relationship between the parties is centered. Id. at 277. Under that test, the Court agrees with Plaintiffs that Texas law should apply.

### B. Exemplary Damages Under Texas Law

In order to recover exemplary damages, the Plaintiffs must show that the Defendant acted with fraud or malice, or gross negligence. Tex. Civ. Prac. & Rem. Code §41.003. Plaintiff must prove the elements of exemplary damages by clear and convincing evidence. Id. Plaintiffs' First Amended Complaint alleges malice.

To show that the Defendant acted with malice, for the purposes of exemplary damages, the act must be of a wanton and malicious nature, or of a somewhat criminal or wanton nature. C&D Robotics, Inc., v. Mann, 47 S.W.3d 194, 200 (Tex. App.–Texarkana, 2001). There is no evidence to indicate that Defendant acted with ill will or evil motive, or that it in any way intended to cause injury in designing the car. No reasonable juror could find that Defendant acted with malice.

It is questionable whether the current record would support a finding of gross negligence, but the Court need not reach that issue at this time.

### Conclusion

For the reasons stated above, Defendant's Motion to Strike the Injury Causation Opinions of Dr. Derek Jones (Dkt. No. 37) is GRANTED. Defendant's Motion for Summary Judgment on Plaintiffs' Wrongful Death and Survival Causes of Action (Dkt. No. 40) is GRANTED on the death claim but DENIED on the survival claim. Defendant's Motion to Strike the Testimony of Plaintiffs' Expert Neil Mizen (Dkt. No. 36) is GRANTED as to the viability of an audio warning

8

system, but otherwise DENIED. Defendant's Motion for Summary Judgment on the liability for the incident (Dkt. No. 39) is DENIED. Defendant's Motion for Summary Judgment on Exemplary Damages (Dkt. No. 42)  is GRANTED. The motion for oral hearing (Dkt. No. 45) is DENIED.

DONE at Laredo, Texas, this 26th day of March, 2008.

**George P. Kazen**
**United States District Judge**